

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00022-CR

**KIMLY RUSHA TERRELL,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2010-627-C2**

## MEMORANDUM OPINION

Kimly Rusha Terrell was convicted of possession with the intent to deliver a controlled substance, cocaine, in an amount of one gram or more, but less than four grams. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c) (West 2010). She was sentenced to twelve years in prison. Because the evidence is sufficient to support the elements of possession and intent to deliver, and because the error, if any, regarding prosecutorial misconduct was not preserved, the trial court's judgment is affirmed.

BACKGROUND

While conducting surveillance of another person, an investigator with the Waco Police Department noticed the person, and many others, frequent a particular residence. Police conducted a no knock entry on the residence and located cocaine and other items that indicated the cocaine was being sold from the residence. Terrell lived at the residence and was home during the police entry.

## SUFFICIENCY OF THE EVIDENCE

Terrell initially complains that the evidence is legally insufficient to support two specific elements of the offense; that being, whether Terrell exercised care, custody, or control of the cocaine seized and whether she intended to deliver the cocaine seized.[1]

As Terrell recognized, the standard enunciated in *Jackson v. Virginia* is now the only standard a reviewing court applies in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the *Jackson* standard, a reviewing court should not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Blackman v. State*, No. PD-0109-10, 2011 Tex. Crim. App. LEXIS 497, *18 (quoting *Jackson*, 443 U.S. at 318-

---

[1] This Court has tried for a long time to ensure appellants specify the elements of the offense which they contend the evidence is insufficient to support. *See e.g. Turner v. State*, 4 S.W.3d 74, 80-81 (Tex. App.—Waco 1999, no pet.) ("A brief asserting legal or factual insufficiency of the evidence is helpful when it focuses our attention on the disputed issues, specifies each element of the crime or cause of action, and specifies which element lacks evidentiary support. The brief should contain a discussion of the relevant evidence and why that evidence is not sufficient."). We commend Terrell's counsel for doing in this appeal what we have asked to be done. We also are disappointed with the State's response which combined Terrell's separate elements into one argument, lapsing into a routine with which we have tried to dispense.

19) (emphasis in original). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Reconciliation of conflicts and contradictions in the evidence is within the province of the jury. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the prosecution has no affirmative duty to "rule out every hypothesis except that of guilt." *Blackman*, 2011 Tex. Crim. App. LEXIS 497 at *19 (quoting *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992)).

*Possession*

Terrell was charged with the offense of possession of cocaine with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c) (West 2010). A person commits unlawful possession of a controlled substance when (1) the person (requires proof of identity) (2) exercises control, management, or care over the substance, and (3) knows the matter possessed is contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the

drug was more than just fortuitous. *Id*. at 405-406. In her first issue, Terrell contends the evidence is insufficient to support the possession element because, she argues, she did not exercise care, custody, or control of the cocaine found. She does not contest whether she knew the substance was contraband.

*Facts*

Pursuant to a search warrant, a no-knock entry was made in the early morning on a house in which Terrell lived. Terrell was found in a bed in one of the bedrooms of the house and secured until the search was completed. A bill and a receipt located in the bedroom where Terrell was found indicated that Terrell was the resident of the house. Mail recovered from trash was in Terrell's name and listed the address of the house searched. The utilities of the house were also in her name.

A scale with a razor blade that field tested positive for cocaine was found in plain view on a DVD stand in the living room of the house. Immediately beyond this stand was the bedroom in which Terrell was located. At the end of the bed where Terrell was found was a table with a tray of loose marijuana. On the dresser[2] next to the bed where Terrell was laying, officers located a digital scale which tested positive for cocaine. Fingernail polish was located next to the scale. In the open first drawer of the dresser, officers located a baggie of marijuana and a purse with about $300 cash stuffed in it. A box of baggies was seized from Terrell's kitchen table.

A connecting bathroom was about 4 feet from the bed in which Terrell was laying. Eric Brooks, a person who was living with Terrell, had barricaded himself in the

---

[2]The State referred to the piece of furniture as a nightstand while the witnesses referred to it as a dresser.

bathroom and apparently ate some cocaine while in the bathroom. Once officers gained entry to the bathroom and secured Brooks, they located cocaine on the top shelf of a cabinet in the bathroom. Officers then located on the top shelf of open shelving in the bathroom an envelope containing $1,000 and a withdrawal slip from a bank.

*Application*

Although Terrell was not in the room where the cocaine was located, there was evidence that Terrell's connection to the cocaine was more than just fortuitous. The bills and utilities of the residence were in her name. A scale and a razor blade which tested positive for cocaine were on a stand just before entering the bedroom where she was located. Another scale which tested positive for cocaine was on a dresser right next to the bed where she was located. Fingernail polish was on the dresser next to the scale, leading to an inference that the dresser was Terrell's dresser. Accordingly, the evidence was sufficient to support the element of possession. Terrell's first issue is overruled.

**Intent to Deliver**

Terrell also contends the evidence is insufficient to prove that she had the intent to deliver cocaine. Intent to deliver may be established by expert testimony, such as testimony from experienced law enforcement, and circumstantial evidence, such as evidence of an accused's possession of the contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

*Additional Facts*

Some of the facts that support the element of possession also support the element of intent to deliver. Those facts do not bear repeating here. Additional facts supporting

the intent to deliver element are as follows.

Investigator John Allovio testified that based on his training and experience, he believed that the cocaine was being sold from the residence. He based this belief on many items found in the residence and on the amount of foot traffic and vehicle traffic at the house. Allovio observed individuals enter the house, remain for about five minutes, and leave. Allovio testified that typically, cocaine was sold in ½ to one gram amounts. The cocaine seized was in two separate amounts, 1.10 grams and 1.36 grams. Some of the cocaine seized was crack cocaine.

Allovio stated that there was no drug paraphernalia for smoking or otherwise ingesting crack cocaine found at the residence which would indicate that the cocaine was for sale and not for personal use. He explained that dealers of cocaine do not use it because a user would smoke all the cocaine and not make any profit. He further explained that razor blades, like the one found on the scale in the living room, are used to cut the cocaine into smaller rocks depending on how much money someone wanted to spend. He explained that scales are used because the sale of cocaine is based on weight.

Allovio also stated that the money stuffed into the purse by the bed was consistent with selling narcotics, explaining that money is simply stuffed somewhere when a sale is made. He further explained that large amounts of cash are also consistent with drug dealing. Investigator David Starr additionally stated that in his experience, people who buy and sell narcotics typically deal in cash and that the money found in the bathroom and in the purse were consistent with drug dealing.

Another officer testified that the use of plastic baggies was also consistent with drug dealing.  Further, during his investigation, Allovio found no evidence of gainful employment by either Terrell or Brooks.

On cross examination, Allovio and other witnesses agreed that some of the items located, such as the baggies and the large amount of cash, were not always indicators of drug dealing and that the money stuffed into the purse could be consistent with tip money received from a job.  Terrell's cousin, Latravia Drake, testified that Terrell was working as a waitress.  However, Drake did not recall telling investigators previously that Terrell was not working at the time of the offense and did not recall having no explanation for investigators of how Terrell was paying her bills.

*Application*

There is little doubt that the evidence established the cocaine was possessed with the intent to deliver.  The most damning evidence of this element is the presence of not one, but two, sets of scales with cocaine residue on them.  The logical inference is that it is a distributor that is most interested in the weight of what is being sold, not the user of a single rock for personal consumption.  But the question is whether Terrell was the one distributing the cocaine.  The jury had to evaluate all the evidence.

We have already held that the evidence that Terrell possessed the cocaine is sufficient.  As stated previously, some of the evidence of possession also tends to support the element of intent to deliver.  The cumulative effect of the evidence is compelling.  In particular, we note that the money ($300) was found stuffed into a purse which was sticking out of an open drawer of a dresser where the scale with cocaine

residue on it was located which, in turn, was next to a bottle of fingernail polish. A reasonable inference would be that if this was money from the sale of cocaine, it was sold by a woman. Terrell's cousin, Latravia Drake, said Terrell was working as a waitress, but it was reasonable for the jury to disbelieve this testimony. Evidence showed that investigators could not determine that Terrell or Brooks were gainfully employed. It was then also reasonable for the jury to disbelieve Terrell's theory that the money in the purse was from tips made as a waitress.

Further, the evidence showed that some of the cocaine was consumed by Brooks, but he did not dispose of or consume the cocaine found in the cabinet. Since the testimony was that typically users use and distributors do not, a logical inference is that Terrell had hidden the cocaine from Brooks and he simply did not know where it was. Moreover, Terrell was charged under the law of parties. The evidence amply supports the conclusion that if Brooks was the distributor, Terrell was not only in possession of the contraband, but also assisted Brooks in the distribution by supplying the location from which it was being sold.

Accordingly, the evidence was sufficient to prove Terrell had the intent to deliver the cocaine. Her second issue is overruled.

## PROSECUTORIAL MISCONDUCT

In her third issue, Terrell alleges that the State engaged in prosecutorial misconduct which violated her constitutional rights to present a defense. The facts of the alleged misconduct are somewhat convoluted and relate to a plea agreement with Brooks. We need not elaborate on the details of the conduct due to the disposition of

the issue.

A timely objection regarding prosecutorial misconduct is necessary to preserve error for purposes of appeal. *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); *Watkins v. State*, 333 S.W.3d 771 (Tex. App.—Waco 2010, pet. ref'd). There are no exceptions to this rule. *See Estrada*, 313 S.W.3d at 303 (where defendant attempted to use an exception to the objection requirement announced in a jury argument case as an exception to the objection requirement in a prosecutorial misconduct case, the Court of Criminal Appeals stated, "We overruled the exception discussed in *Willis* more than ten years ago," and overruled defendant's issue). Terrell did not object to the alleged misconduct by the prosecutor.

Accordingly, error, if any, is not preserved, and Terrell's third issue is overruled.

## CONCLUSION

Having overruled each of Terrell's issues on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed July 20, 2011
Do not publish
[CR25]